FRANK v. AMERICAN TRUST CO.

1. FRAUDS, STATUTE OF—PARTIAL PERFORMANCE—SALE OF INTEREST
   IN LAND.
   Partial performance of contract for sale of interest in real estate
   excepts it from operation of statute of frauds requiring such
   contract to be signed by vendor (3 Comp. Laws 1929, § 13411).

2. CORPORATIONS—BREACH OF CONTRACT—DAMAGES.
   Stockholders, advancing money to corporation to buy long-term
   lease under agreement that they were to be paid nothing
   unless lease was sold for over $150,000, are not entitled to
   recover on theory of breach of contract, where lease could not
   be sold and was assigned to another corporation; testimony
   showing that lease had no value.

Appeal from Wayne; Black (Edward D.), J., presiding. Submitted April 21, 1932. (Docket No. 54, Calendar No. 36,388.) Decided June 23, 1932. Rehearing denied September 14, 1932.

Assumpsit by Harry Frank and another against American Trust Company, a corporation, to recover an advancement. Judgment for plaintiffs. Defendant appeals. Reversed.

*George B. Murphy* and *Seymour J. Frank,* for plaintiffs.

*Wiley, Streeter, Smith & Ford,* for defendant.

McDONALD, J. This suit was brought to recover the sum of $5,000 which the plaintiffs claim to have advanced to the defendant to enable it to purchase a certain leasehold interest from the receiver of the Detroit Mortgage Corporation. The case was tried by the court without a jury and resulted in a judgment for the plaintiffs. The defendant has appealed.

Briefly, the following are the material facts: By mortgage foreclosure, the defendant became the owner of a long-term lease on the so-called Graystone property in the city of Detroit. The fee was in the regents of the University of Michigan. The defendant sold the lease to the Detroit Mortgage Corporation and took back a purchase money mortgage of $300,000. The Detroit Mortgage Corporation defaulted and subsequently went into receivership. Defendant began foreclosure proceedings, and, while they were pending, the receiver, Charles J. DeLand, who had secured an agreement from the owners of the fee for an extension of the lease, offered to sell his interest to the defendant for $50,000. The defendant accepted this offer, and, as a means of securing the necessary funds, entered into an agreement with a number of its directors, which agreement is the basis of this suit.

The plaintiffs, designated as subscribers, signed this agreement and paid the $5,000 pledged. Both were stockholders; Harry Frank was a director. The subscribers paid in a total of $55,000 with which the defendant purchased the interest of the Detroit Mortgage Corporation. In the agreement it was stipulated that the subscribers should have a 60-day option to purchase the lease from the defendant for $150,000; and if the option were not exercised by that time, the defendant might sell the lease for the best price obtainable and apply the proceeds in the following manner:

"*First:* To the payment of the expenses of sale including any broker's commission actually incurred or paid.

"*Second:* To the payment of the sum of $150,000 to you and pay over any surplus then remaining, together with any part of the sum of $60,000, not ex-

pended as herein authorized, unto the subscribers hereto.''

The option was not exercised by the subscribers. No time for performance as to the sale was specified in the contract. For a period of one year the defendant attempted in good faith to carry out its agreement in respect to the sale. A sale was impossible. The directors then caused to be organized by some of their number the Graystone Properties Corporation and transferred the lease in payment of the capital stock of that company. It was arranged that sufficient preferred stock should be issued to the subscribers to the original contract in payment of the amounts they had contributed to purchase the lease. The plaintiffs refused a tender of $5,000 of this stock and demanded a return of the money they had invested. On refusal, they filed a bill in the Wayne circuit court to have the contract reformed so as to show that the $5,000 paid by them was merely a loan to the defendant. On the hearing, the court found no cause for reformation, and transferred the case to the law side.

In the declaration there filed, the plaintiffs claim the right to recover on the ground, first, that the contract, not being signed by the defendant, was void under the statute of frauds (3 Comp. Laws 1929, § 13411); second, if the contract was not void, it was breached by defendant in transferring the lease to a new corporation instead of selling it; and third, that the money advanced by them was a loan.

These three propositions are urged in their brief in support of the judgment and require our consideration.

1. Was the contract void under the statute of frauds because not signed by the defendant?

The plaintiffs contend that the contract involves the sale of an interest in real estate and is void because not signed by the vendor. The agreement was not properly signed by the American Trust Company, but it was at least partially performed, and, under the well-settled rule in equity, partial performance excepts such a contract from the operation of the statute of frauds.

2. On the claim of recovery for breach of contract, counsel for the plaintiffs states their theory as follows:

"If the court should come to the conclusion that the company did accept the offer, then we will ask the court for damages for breach of contract because under the contract, if the court finds there was a valid contract, the defendant breached the contract because they never sold the leasehold interest but organized a new corporation and transferred the assets, these leasehold assets from the American Trust Company to the new corporation without the consent or ratification of the plaintiffs, Frank. Therefore, the contract was breached, if there was one, and the measure of damages would be the amount the plaintiffs paid in, namely, $5,000 plus interest."

There is considerable doubt as to whether defendant's action constitutes a breach of the contract. But it is not necessary to discuss that question. Conceding the breach, as claimed by the plaintiffs, we find no evidence that they were damaged thereby. Their damages are to be measured by the terms of the contract. The question is, What did they lose by the failure of the defendant to carry out its promise? If the lease had no value and could not be sold, they lost nothing. They had no interest in the lease itself. By the terms of the contract, they were to be paid nothing unless the lease was sold for an amount

in excess of $150,000. It was provided that in case of a sale they were to share with the other subscribers in the proceeds after deducting $150,000, which was to be retained by the company. On the theory of a breach, the amount of their damages would depend on the value of the lease at the time of the breach. If it had no value in excess of $150,000 they are entitled to nothing. The only evidence that the lease had any value was the fact that it was assigned to the new corporation at a value of $255,000. That evidence is not conclusive. It is contrary to all the other evidence. The plaintiffs did not testify as to its value. They knew it could not be sold. They knew it had become necessary to charge it off the defendant's books; that it was marked down and carried at a value of $1. It did not produce sufficient revenue to pay the ground rent to the lessors. It was an increasing burden and expense to the defendant. We agree with the witnesses who testified that it had no value. If it had no value or if its value was not in excess of $150,000, the plaintiffs have sustained no damages. The evidence will not permit a recovery on the theory that the contract was breached.

3. Was the advancement of $5,000 by the plaintiffs intended by both parties as a loan?

The chancery court settled that question adversely to the plaintiffs' claim when it refused to reform the contract.

Under no theory are the plaintiffs entitled to recover. It quite conclusively appears by the record that they and the other subscribers, all of whom were financially interested in the American Trust Company, pledged and paid in their money in order to help the company out of an embarrassing position in reference to the Graystone lease. The money invested in that lease appeared to be a total loss. The

company could carry it no longer and could not sell it. But it was thought that by acquiring the receiver's right to an extension the probability of a sale would be enhanced. The company could not put up any more money. The plaintiffs were fully aware of the situation. They and the other subscribers paid in their money with no expectation of getting any of it back unless the company succeeded in selling the lease for more than $150,000. For a year and upwards the company did its utmost to sell but was unable to do so. Plaintiffs do not claim that a sale could have been made. They knew it was impossible. They invested $5,000 in a highly speculative venture. They hardly expected a return of their money. They lost and should take their loss as gamely as the other subscribers have done.

The judgment is reversed, with costs to the defendant, without a new trial.

CLARK, C. J., and SHARPE and WIEST, JJ., concurred with McDONALD, J. POTTER, NORTH, and FEAD, JJ., concurred in the result. BUTZEL, J., did not sit.